UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

LUIS FELICIANO,

    Plaintiff,                              Case No: 22-CV-61767

vs.

JPMORGAN CHASE BANK, N.A.,
a national association,

    Defendant.

                                      /

## COMPLAINT

    Plaintiff, LUIS FELICIANO,  sues the Defendant, JPMORGAN CHASE BANK, N.A., a national association, for failure to comply with the statutory obligations of Title 15 of U.S.C.A. §1601 note, 1693 to 1693r, commonly known as The Electronic Funds Transfer Act (EFTA)  and states:

### JURISDICTIONAL ALLEGATIONS

1.      Jurisdiction is conferred on this Court by Title 28 U.S.C. §1331 and §1681 et seq.

### VENUE

2.      Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. §1331 (b) and (c), as the unlawful practices alleged herein occurred in Broward County, Florida, the Defendant is a Corporation engaged in business in Broward County, Florida, and the transactions that form the basis of Plaintiff's complaint occurred within the District rendering venue proper before this Court.

### PARTIES

3.      Plaintiff, LUIS FELICIANO, is a natural person residing in Broward County, Florida

who is an account holder  and the owner of a debit card issued by Defendant.  Plaintiff has been the

sole owner of the account in question and the sole authorized user of the debit card during the entire

duration of the unauthorized transfers in this claim.

4.        Defendant JPMORGAN CHASE BANK, N.A., a national association, is doing

business in Broward County, Florida as a financial institution and has its principal place of business

in Columbus , Ohio.   Plaintiff maintained a checking account with Defendant who issued a debit

card to Plaintiff allowing Plaintiff to withdraw funds from his Chase account using his personal

identification number.

## NATURE OF CLAIM

5.        This is an action for damages for willful violation of the EFTA arising from

unauthorized electronic fund transfer.  The purpose of the EFTA, as codified at 15 U.S.C. §1693(b),

is to provide a basic framework establishing rights, liabilities, and responsibilities of participants in

electronic fund and remittance transfer systems with the primary objective being individual

consumer rights.

6.        §1693d provides in relevant part as follows:

c.  A financial institution shall provide each consumer with a periodic statement for each

account of such consumer that may be accessed by means of an electronic fund transfer. Except as

provided in subsections (d) and (e), such statement shall be provided at least monthly for each

monthly or shorter cycle in which an electronic fund transfer affecting the account has occurred,

or every three months, whichever is more frequent.

7.        §1693f provides in relevant part as follows:

(a) Notification to financial institution of error

If a financial institution, within sixty days after having transmitted to a consumer documentation pursuant to section 1693d (a), (c), or (d) of this title or notification pursuant to section 1693d (b) of this title, receives oral or written notice in which the consumer—

(1) sets forth or otherwise enables the financial institution to identify the name and account number of the consumer;

(2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to section 1693d (b) of this title, the consumer's account, contains an error and the amount of such error; and

(3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred, the financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days. The financial institution may require written confirmation to be provided to it within ten business days of an oral notification of error if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent. A financial institution which requires written confirmation in accordance with the previous sentence need not provisionally re-credit a consumer's account in accordance with subsection (c) of this section, nor shall the financial institution be liable under subsection (e) of this section if the written confirmation is not received within the ten-day period referred to in the previous sentence.

8.      A "consumer" is defined by 15 U.S. C. §1693a(5) as a "natural person".

9.      Should the financial institution find than an error **did not** occur after an investigation pursuant to subsection (a) or (c),  §1693(d) provides:

If the financial institution determines after its investigation pursuant to subsection (a) or (c)

3

of this section that an error did not occur, it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation, and *upon request of the consumer promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur*. The financial institution shall include notice of the right to request reproductions with the explanation of its findings. (emphasis added).

10.     A plaintiff is entitled to treble damages, pursuant to 15 U.S.C. §1693(e), if: in any action under section 1693m of this title, the court finds that—

(1)  the financial institution did not provisionally recredit a consumer's account within the ten-day period specified in subsection (c) of this section, and the financial institution

(A) did not make a good faith investigation of the alleged error, or

(B) did not have a reasonable basis for believing that the consumer's account was not in error; or

(2)  the financial institution knowingly and willfully concluded that the consumer's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to the financial institution at the time of its investigation, then the consumer shall be entitled to treble damages determined under section 1693m (a)(1) of this title.

11.     Pursuant to 15 U.S.C. §1693(f), the following "acts" constitute error: For the purpose of this section, an error consists of—

(1) *an unauthorized electronic fund transfer*;

(2) an incorrect electronic fund transfer from or to the consumer's account;

(3) the omission from a periodic statement of an electronic fund transfer affecting the

consumer's account which should have been included;

(4) a computational error by the financial institution;

(5) the consumer's receipt of an incorrect amount of money from an electronic terminal;

(6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this subchapter; or

(7) any other error described in regulations of the Board. (emphasis added).

## GENERAL ALLEGATIONS

12.     For approximately 20 years, Plaintiff maintained a checking account with Defendant. In-person communication with Defendant took place at the Chase branch office located at 6860 Miramar Parkway, Miramar, FL.  During all relevant times, Plaintiff has been the only name on the account and the only authorized signature on the account.  His monthly account statements were always delivered through the US mail to his home address and not delivered electronically.

13.     Approximately 4 years ago, at a meeting in the above-mentioned branch location, Defendant suggested to Plaintiff that he switch his checking account to a Private Client Checking Account due to the large balance he consistently maintained.  Defendant advised this would provide Plaintiff a higher interest rate on the balance and a greater degree of personalized banking services. Plaintiff agreed to the switch and received one debit card for the account.

14.     Plaintiff is unfamiliar and uncomfortable with on-line banking and did not establish on-line access to his checking account.  Plaintiff requested to receive the monthly written account statements in the mail as authorized by the account agreement .  He was issued one debit card for the account which he sparingly used for cash withdraws only and not for on-line or point of sale purchases.  In calender year 2020, Plaintiff used his debit card a total of 8 times to make cash

withdraws totaling $2290, all from the ATM located at the Miramar Chase branch location.  He

continued to receive his written monthly statement s timely in the mail.  From January 2021 through

August 2021, Plaintiff used his debit card a total of 4 times to make cash withdraws totaling $560,

all from the ATM located at the Miramar Chase branch location. In September 2021, Plaintiff made

no ATM cash withdraws.  In October 2021, Plaintiff made one (1) ATM cash withdraw for $100.

He continued to receive his written monthly statements for January through August 2021 timely in

the mail.

15.     For unknown reasons,  Plaintiff did not timely receive his written monthly statement

in the mail for September 2021.  Plaintiff did not timely receive his monthly statement for October,

November, or December 2021.  At no time did Plaintiff ever authorize a change in the delivery

method of his monthly statements.

16.     On February 5, 2022, Plaintiff received in the mail the written monthly statement for

his Private Client Checking Account for the preceding month: January 2022.  Upon reviewing the

statement, Plaintiff immediately realized there were 16 unauthorized cash withdraws in January 2022

from his account totaling $13,800.  Fifteen of the withdraws were in $900 amounts and one was for

$300.  All withdraws were from the Miramar Chase branch location.  One day, January 18, showed

four (4) withdraws of $900 each totaling $3600.  There were multiple cash withdraws on five

separate days during the month.

17.     Upon realizing the errors, on that same day, February 5, 2022, Plaintiff immediately

contacted Defendant to report the unauthorized withdraws from his account in January 2022 as

reflected in the statement.  It was during this call that Defendant first advised Plaintiff that in

addition to the ATM withdraws in January 2022, there were similar ATM cash withdraws from his

6

account in November and December 2021 totaling over $25,000 which Plaintiff immediately identified as unauthorized. When Plaintiff questioned Defendant as to why he had not received his monthly statements in the mail for October, November, and December 2021, Defendant offered no explanation but advised Plaintiff to go to a Chase branch location and obtain the written statements for his own review. Defendant advised Plaintiff his debit card would be de-activated and a replacement card would be sent. Defendant also advised an investigation would be opened concerning the unauthorized withdraws.

18.     On February 9, 2022, Plaintiff went to a Chase bank location and obtained the written account statements for September, October, November and December 2021. Upon reviewing the statements, Plaintiff  discovered there were 22 unauthorized cash withdraws from his account totaling $14,800 in November 2021. Four dates, November 8, 12, 22, and 29, had 4 withdraws each day with November 22 and November 29 totaling $3600 each day.   There were 12 unauthorized cash withdraws totaling $10,800 in December 2021 with the four withdraws on December 6 totaling $3600. All withdraws were from the ATM at the Miramar Chase branch location.

19.     Without any formal interview and having heard nothing from Defendant as to the status of the investigation, Plaintiff contacted Defendant on February 10, 2022 for an update. Defendant advised Plaintiff the investigation had been completed and his claim of unauthorized withdraws had been denied with no adjustment to his account. Defendant advised Plaintiff he would be receiving a letter concerning the investigation.

20.     On or about February 12, Plaintiff received a letter from Defendant dated February 5, 2022, the same date he received the January 2022 statement and first reported the unauthorized activity, advising Plaintiff of the following:

"As we discussed and agreed, no action will be taken.  This inquiry is now resolved."

There had been no discussion Plaintiff and Defendant concerning the unauthorized withdraws other than the initial report and certainly no agreement that Defendant was to take no further action.

21.     On or about February 14, 2022, Plaintiff received a second letter from Defendant dated February 10, 2022 advising Plaintiff of the following:

"We found the transaction(s) was processed according to the information you provided or was authorized.  No adjustment will be made to your account at this time.  Contact us if you would like to request the information we used for our research."

Plaintiff had provided no information to Defendant that he had authorized any of the cash withdraws from November and December 2021 or January 2022.  Plaintiff had never lost or misplaced the lone debit card to the account.  Plaintiff had never given out his debit card or PIN to anyone or used his debut card for any on-line transactions.

22.     Having doubted the extent of the investigation allegedly conducted by Defendant, on March 22, 2022, a written request was made to Defendant to forward any and all information used by Defendant in reaching its conclusions as contained in the February 10, 2022 letter.  To date, the request has been ignored and no reply to the request or information has been provided.

23.     On or about June 6, 2022, after having received the monthly statement for May 2022, Plaintiff discovered three new unauthorized cash withdraws from his checking account.  Two were on May 16 for $400 each and one on May 17 of $400 for a total of $1200.00.  Plaintiff immediately reported these new unauthorized withdraws to Defendant.  To date, Defendant never has notified Plaintiff of any action taken by Defendant and has not refunded any amounts.

**COUNT 1 VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT**

24.     The Plaintiff re-alleges and includes by reference all allegations contained in paragraphs 1 through 23, as if fully set forth herein.

25.     Beginning on November 1, 2021 and continuing on November 2, 8, 12, 15, 18, 22 and 29, and on December 6, 13, 15, 17, and 27, 2021, and on January 3, 6, 11, 12, 18, 19, and 24, 2022, and on May 16 and 17, 2022, unauthorized cash withdraws which are considered errors under the EFTA were made from Plaintiff's Private Client Checking Account held with Defendant on 53 separate occasions totaling $40,600.00.  During this period, Plaintiff maintained sole possession of his debit card and PIN and did not authorize any entity to access his account or remove funds.

26.     During this same period and while being the sole account holder, Plaintiff did not timely receive his written monthly statement for September, October, November, or December 2021 as he had customarily received in the past, in violation of §1693d (c).

27.     Plaintiff reported the January 2022 unauthorized activity to Defendant on February 5, 2022, the day he received the January 2022 statement in the mail showing the unauthorized withdraws.  It was on this same date, February 5, 2022, that Defendant advised Plaintiff of other ATM cash withdraws from November and December 2021 which Plaintiff immediately identified as unauthorized and errors.   Plaintiff's reporting to Defendant of the unauthorized transfers was within 60 days of receipt of the written account documentation evidencing the activity as required by §1693f(a).

28.     At no time prior to advising  Plaintiff of the denial of his claim did  Defendant ever conduct a thorough, good faith investigation of the alleged errors.  To the contrary, Defendant's notification to Plaintiff dated February 5, 2022 closing the inquiry with no further action was drafted the **exact same date the errors were first reported by Plaintiff.**  It is inconceivable Defendant

could have received the report, conducted a good faith investigation of all 53 withdraws over a 3 month period, then determined there was no error and close the investigation, all on the same day. Defendant knowingly and willfully concluded that Plaintiff's account was not in error when such conclusion could not reasonably have been drawn from the evidence available to Defendant at the time of the investigation, February 5, 2022.

29.     Defendant had no reasonable basis for believing that Plaintiff's account was not in error.   By way of example,

(a) per Chase Account Agreement, the Chase In-branch or other Chase ATM daily limit for a Chase Private Client debit card is $3000.  On four (4) separate days: November 22, November 29, December 6, 2021 and January 18, 2022, unauthorized ATM debit card withdraws from Plaintiff's Private Client Checking Account totaled $3600 each day. Defendant has failed to offer any explanation whatsoever as to why or how the daily limit it set for withdraws was exceeded four (4) times.

(b)  per Chase Account Agreement, the Chase In-branch or other Chase ATM monthly limit for a Chase Private Client debit card is $10,000.  For November 2021, December 2021, and January 2022, unauthorized ATM debit card withdraws from Plaintiff's Private Client Checking Account totaled $14,300, $10,800, and $13,800 respectively.  Defendant has failed to offer any explanation whatsoever as to why or how the monthly limit it set was exceeded three (3) times.

(c) In the 20 months preceding November 2021, Plaintiff used his debit card for cash withdraws a total of 13 times withdrawing a total of $2950.  For the first two weeks of November 2021 alone, the card was used 10 times withdrawing $500 each time totaling $5000.  On one day alone, November 29, four (4) withdraws of $900 each totaling $3600  were completed.  Chase

Private Client Banking offered Plaintiff a higher level of personalized banking services. At no time during the unauthorized withdraws or during its investigation did Defendant ever inquire with Plaintiff about the highly unusual and significant increase in cash withdraws.

(d)     At no time did Defendant ever advise Plaintiff that it had recovered the security tape footage from the subject ATM to develop an image of the person(s) withdrawing the funds and requesting Plaintiff's help in attempting to make an identification.

30.     Since reporting to Defendant on or about June 6, 2022 of three (3) unauthorized cash withdraws on May 16 and 17, 2022, Defendant has failed to advise Plaintiff of any action taken in investigating these new claims or refunded the account.
Defendant's actions are in violation of §1693f(e) entitling Plaintiff to treble damages.

31.     At no time to date, despite a formal request on March 22, 2022, has Defendant delivered to Plaintiff reproductions of any documents which Defendant relied upon in reaching its conclusion that error did not occur, or provide to Plaintiff any explanation of its findings supporting its decision, all in violation of §1693f(d).

32.     Defendant's failure to assume liability for unauthorized withdraws violated Plaintiff's rights as provided by 15 U.S. C.§1693 et seq. and constitute unfair and unconscionable business practices.

33.     Defendant has failed in whole to comply with the consumer protection provisions of the Act. §1693g of the Act sets out the circumstances in which a consumer will be liable for unauthorized transactions. Subsection (b) places the burden of proof on the financial institution to show all of the subject transactions were authorized or if unauthorized, that all conditions of consumer liability have been met. There has been no showing of any consumer liability.

34.     As a direct and proximate cause of Defendant's violation of the EFTA, Plaintiff has suffered damages.

35.     Plaintiff has performed all obligations required under the Act and all conditions precedent to making this claim have been satisfied.

36.     The Plaintiff has retained the law office of BRADLEY E. LOLUS, P.A. and is obligated to pay a reasonable fee for its services.

37.     The Plaintiff is entitled to the awarding of reasonable attorney's fees and costs pursuant to §1693m(a)(3) of the Act.

**PRAYER FOR RELIEF**

38.     Plaintiff has incurred actual damages in the amount of $40,600 and is seeking treble damages, as authorized by §1693f(e), in the amount of $121,800, plus prejudgment interest, attorney fees and costs.

WHEREFORE, THE PLAINTIFF prays this Court enter judgment against Defendant for actual damages, treble damages,  reasonable attorney fees and costs,  interest as permitted by law, and other relief this Court deems just and proper.

> BRADLEY E. LOLUS, P.A.
> 4300 N. University Drive
> Suite B-100
> Lauderhill, FL 33351
> Tel: (954) 749-3400
> BELPSU@aol.com
>
> /s/ Bradley E. Lolus
> Bradley E. Lolus #603041
> Attorney For Plaintiff